232

## CRIMINAL COURT OF BALTIMORE CITY.

Filed June 27, 1923.

THE STATE OF MARYLAND
VS.
MILUTEN NADLACKA.

*Ellis Levin*, Assistant State's Attorney, for State of Maryland.

*Emory L. Stinchcomb* and *Richard H. Stevenson* for traverser.

GORTER, HEUISLER, CARROLL T. BOND, STEIN, STUMP, DAWKINS, STANTON and FRANK, JJ.—

The indictment in this case charges the traverser, Miluten Nadlacka, with having contracted a bigamous marriage with Rosa Nadlacka in the City of Baltimore, on or about the 17th day of September, 1921, the traverser then being the husband of Angelina Nadlacka, then and now living.

This bigamous marriage was shown to have been performed in this City by a religious ceremony on or about the 17th day of September, 1921; both wives were in Court at the trial which was had before the Court without a jury and resulted in a verdict of "guilty." The trial was held on two days, December 20th, 1922, and January 26th, 1923.

Marie Angelina Nadlacka, the prosecuting witness, hereinafter called the first wife, testified over the traverser's objection, that in 1903, when 26 years old, she married the traverser in the Court House in Lougoush, then Hungary now Roumania; and on July 4th, 1910, again married him before a priest in the Serbian Church in Belgrade, that she had one child, by the traverser, a daughter about 17 years of age; that she and the traverser together landed in New York City without their child in November, 1911; came to Baltimore at once; lived there ever since as man and wife, until June 12th, 1921, when the traverser sent her to Europe for their child; that she reached her home on July 10th, 1921; returned to New York on September 2nd, 1922; and to Baltimore on September 5th, 1922; when she had her husband arrested for bigamy; on cross-examination she testified that everybody in the Old Country was married in the Court House, and then in the Church; that in the time between the two marriages she and the traverser lived together in Damogish.

The traverser testified in effect, that he did not marry the witness Marie in 1903; that he first met her in Belgrade in 1911; that she then was married; that he never married anyone until he married Rosa, the so-called second wife; that until she left him in June, 1921, to go to the Old Country, he gave to above-named prosecuting witness all the money he made, she sent it to her daughter. On cross-examination, he testified, he bought a house which was put in the name of himself and the so-called first wife; "which she had done without his knowledge as he could not speak English"; that "we both signed our names and I asked her and she said she was a witness and had to sign it."

At the next hearing on January 26th, 1923, the prosecuting witness was recalled and testified that the ceremony in Lougoush or Logos was performed by a civilian judge; that in Hungary the priest does not marry people.

That in Belgrade a priest of the Greek Catholic Church married her to the traverser by a religious ceremony; that when she went to Serbia, she left the Roman Catholic Church and joined the Greek Catholic Church, to which her husband belonged. On redirect examination she testified that before she was married in Belgrade the priest called it out in Church every Sunday for three weeks, and that is why she waited three weeks; that in the Court House where she was married, it was put up in a window three weeks before where it could be read. Several of the State's witnesses testified that in their presence the traverser spoke of the prosecuting witness as his wife. On cross-examination by traverser's counsel a State's witness said that in Hungary "First you get married in the Court and then you go in the Church when you want to; if you don't want it, it is alright too."

In each stage of this case the traverser was represented by different counsel, at the first hearing by Mr. Padgett, and at the next by Mr. Stephenson, and on the motion for new trial by Mr. Emory L. Stinchcomb; the latter of whom urged that a new trial should be granted for the following reasons:

1. That in a bigamy case evidence of cohabitation and repute is not admissible to establish a prior marriage.

2. That the prior marriage should be proven at the specific time and place laid.

3. That the prior marriage must be established by strict proof.

4. That such marriage must be shown to be valid where celebrated.

5. That the testimony of party to such prior marriage is not sufficient for conviction.

6. That the admission and testimony alone of a party to a marriage is not sufficient.

Most, if not all, of these objections do not take into consideration that, the counsel appearing on the second day of the hearing apparently thought the evidence admissible and persuasive, as shown by the following statement on pages 83 and 84 of the testimony, viz:

"My dilemma is this, the matter of reputation is here before the Court.

"The Court: Reputation.

"Yes, sir, of the status existing between him and her, to wit, whether or not they were married, and whether the Court and jury can infer from the testimony the actual marriage status existing, and the dilemma that offers itself to me seems to be on appeal. We have no exception to offer or to take up if your Honor decides to rule these out on objection. In other words, there is nothing there except the testimony itself from which the Court and jury may infer either one way or the other and it is not subject to review on appeal. The Court sitting as a jury might say the preponderance of proof is either way. That is why I meditated and hesitated."

While in a criminal case, as far as possible, a Court should protect a traverser from acts of counsel, yet this should not be done merely because a latter counsel thinks ill-advised the action of a predecessor in an earlier

stage of the case, and to which on a motion for new trial the latter counsel objects, yet when a case has been fairly tried, a Court should be slow to grant such a new trial, because evidence which the latter counsel thinks irrelevant was admitted without objection. In this case, it seems the authorities hold admissible and sufficient the testimony objected to for the first time on the motion for a new trial.

The first, second, and third points of counsel are not supported by the evidence.

The prosecuting witness by her clear and unequivocal testimony establishes as facts, the time, place and manner of her civil and religious marriages to the traverser, shows that the second ceremony was performed on July 4th, 1910, in Church, at Belgrade, by the Greek Catholic Priest; and after three weeks publication of bans.

That it was done in conformity with the laws of the place where celebrated is shown by the testimony above quoted, produced on cross-examination by the traverser's counsel. This proves the second ceremony of the first marriage was a religious ceremony and was performed according to the law of the place where celebrated. As a matter of law:

(a) The detailed statement of the prosecutrix is relevant evidence and proves not only the law of such place, but that it was followed.

(b) That no proof that a ceremonial marriage has been performed in another country, a presumption arises, that it was done in accordance with the laws of that country, and is valid.

(c) A marriage in a foreign State may be proven by the testimony of any person, who was present at the ceremony.

(d) The testimony alone of a contracting party is sufficient to prove marriage.

Pattison vs. Gaines, 6 Howard 589.

3 R. C. L. Sec. 22, fol. 808.

Richardson vs. The State, 103 Md. 112-117.

"Upon an issue of marriage vel non, it is always competent for the State to prove the fact of marriage and the identity of the parties by a witness, who was present at the marriage ceremony. It would appear that the testi-

mony of one of the contracting parties might be accepted as fairly satisfactory evidence tending to prove the facts."

Richardson vs. The State, 103 Md. 112-117.

The cases of Le Brun vs. Le Brun, 55 Md. 496, and Bowman vs. Little, 101 Md. 273, &c., cited by Mr. Stinchcomb, do not support his various objections.

The Le Brun case was a bill to annul a marriage because bigamous. In discussing the weight of the evidence, Judge Miller who delivered the opinion said: "It would be an alarming dictum to hold that an actual ceremonial marriage could be made void by the mere confession or declaration of one of the parties to it that he had another wife living at the time. The rule adopted as a guard against imposition and the danger of marriage being set aside by collusion of the parties precludes us from placing much reliance upon such testimony, especially in a case when the fact that "Randall" (the first husband) was alive at the time, if, indeed, it was a fact as the bill charges, could by the use of proper and reasonable diligence have been established by direct and conclusive proof."

This shows that the rule refers to the weight of the evidence and not to its admissibility or legal sufficiency.

In the Le Brun case the first husband was not in Court and his testimony not had. In this case the first husband, the traverser, was in Court and did testify and denied the first marriage.

The right of the first wife to testify in a bigamy case against her husband, the traverser, is settled by the Richardson case, *supra*.

In Bowman vs. Little, 101 Md. 273, the husband was dead and the wife was not allowed to testify because incompetent under the Code, Art. 35, Sec. 3. The first marriage was attempted to be proven by the production of a marriage certificate in which the first husband was called George W. Bowman of Haleystown and the wife Catherine McGranagan of E. Harrisburg. The Court decided that this was not evidence legally sufficient to prove that the man named was G. Walter Bowman of Hagerstown, and the woman Catherine E. Bowman. The Court also holding that the identity of the parties

must be established by satisfactory evidence apart from the marriage certificate. The Court of Appeals in the Richardson case, *supra*, thereafter held that the wife's testimony was such satisfactory evidence.

The cases of Jones vs. Jones, 45 Md. 588, Redgrave vs. Redgrave, 38 Md. 93, &c; O'Leary vs. Lawrence, 138 Md. 151, 152, and other like cases, cited by counsel in support of his objections, that evidence of cohabitation and repute is not admissible, do not support them. They merely discuss the weight of the evidence and lay down the rule that the presumption of innocence always overcomes the presumption of guilt, and in so far as it applies to the present case is best expressed in the O'Leary case, *supra*, as follows:

"A legal marriage is only presumed from general repute and cohabitation, and where the presumption is met by the counter presumption of innocence, the former must give way and the law requires that the alleged first marriage shall be established as an actual fact, by more direct proof."

Applying such rule to this case, we find:

A. The presumption of marriage between the prosecuting witness and the traverser, arising from cohabitation and repute.

B. The presumption of innocence arising from the proof of the ceremonial marriage in Baltimore of the traverser to Rosa, which presumption under the rule overcomes the first presumption.

C. The direct proof of the prosecuting witness, Marie, of her civil marriage to the traverser and of her latter religious marriage to him, each of which antedated the religious ceremony in Baltimore, so that we have here that evidence which in the Richardson case, 103 Md. 112, our Court of Appeals held "fairly satisfactory evidence" and which is the "more direct proof" required by cases cited by counsel for the motion.

In this case there is one thing usually not present in such cases, and that is the so-called second wife, had known the traverser and so-called first wife for sometime before the second marriage; knew they were living together as man and wife and had so lived together for sometime, so that in marry-

ing the traverser, she did so with her eyes open; probably being induced to do so by her belief in his statements that although living with the prosecutrix as man and wife, he was not married to her.